UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HODOSH, LYON & HAMMER, LTD., :
    Plaintiff, :
     :
    v. : C.A. No. 15-316S
     :
BARRACUDA NETWORKS, INC., alias, :
BARRACUDA BACKUP SERVICE, alias, :
    Defendant. :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

    Defendant Barracuda Networks Inc. asks this Court to transfer this case to the Northern District of California so that court can order the parties to submit to binding arbitration in Cupertino, California. ECF No. 4. In support of its motion, it relies on three on-line documents that it contends contain forum selection clauses that are incorporated into its contractual relationship with Plaintiff arising from the 2009/2010 sale of a server with access to cloud-based back-up services and related software. Plaintiff, Hodosh, Lyon & Hammer, Ltd., a law firm, adamantly denies that it assented to or was even aware of the terms and conditions on which the motion is based. Defendant's motion has been referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B). I recommend that it be denied because Defendant concedes that it does not know whether any of the purported forum selection clauses was posted on its website at the time of the formation of the contract with Plaintiff. I also recommend that it be denied because Defendant has failed to sustain its burden of showing that any of them was displayed so as to place consumers on constructive notice that use of its product constituted an objective manifestation of assent to the terms. In any event, even if this Court were to find that the parties'

contract includes the terms and conditions on which Defendant relies, two of the three do not afford Defendant the relief it seeks.

I. **BACKGROUND**[1]

Either sometime in late 2009 or early 2010,[2] Plaintiff purchased a server, with related back-up capability and software, from a reseller of Defendant's products known as Excel Tech Inc.  Hammer Aff. ¶ 3 (ECF No. 5-2 at 1); Jensen Aff. ¶ 7 (ECF No. 9-3 at 2).[3]  Because Plaintiff dealt with a bricks-and-mortar retailer, instead of buying the product through Defendant's website, it was not exposed to whatever on-line presentation of terms an on-line purchaser might have encountered in 2009 or 2010.  Defendant claims the server was packaged and shipped to Plaintiff on December 10, 2009.  Jensen Aff. ¶ 7.  In addition to the server, Defendant's package included an introductory form letter that congratulated Plaintiff on having chosen "the Barracuda Backup Service to integrate local and secure offsite backup for disaster recovery;" the letter informed Plaintiff about installation of the backup service.  Jensen Aff. ¶ 9; ECF No. 9-4 at 2.  At the foot of the letter in type smaller than the balance of the text, it stated:

> Note: The terms and conditions, including product warranty information for the Barracuda Backup Service are located at http://www.barracuda.com.

ECF No. 9-4 at 2.  According to Defendant, in the present, a consumer who goes to its website (www.barracuda.com) will find a button labelled "Purchase Terms;" this button allows the

---

[1] These facts are drawn from the pleadings, the affidavits presented in support of, and opposition to, the motion and the documents attached to the motion and reply.

[2] The parties' affidavits differ regarding the applicable date: Plaintiff avers that the purchase was made in February 2010, while Defendant swears that the sale was consummated in 2009 and the package with the server and related documents was mailed in late 2009 and activated in early 2010.  Compare Hammer Aff. ¶ 3, with Jensen Aff. ¶¶ 4, 7, 20.  This difference has no bearing on the motion to transfer venue, except that it expands the relevant period for examination of the applicable terms of purchase then posted on Defendant's website.

[3] The ECF references to these affidavits will not be repeated in this report and recommendation.  Plaintiff relies on the affidavit of its sole shareholder, Attorney Scott Hammer, while Defendant relies on the affidavit of Andy Jensen, currently a Senior Director for its Cloud Operations.

2

consumer to click on a hyperlink to a document entitled "Terms and Conditions" (hereinafter "Terms & Conditions").  Jensen Aff. ¶¶ 10-11; ECF No. 4-2 at 2, ECF No. 9-1 at 2.[4]  In the eighteenth paragraph of these Terms & Conditions is the following clause:

> If the parties are unable to resolve the Dispute through negotiation or mediation within a reasonable time after written notice from one party to the other that a Dispute exists, the Dispute will be settled by binding arbitration . . . .  The arbitration hearing shall take place in Cupertino, California.

ECF No. 4-2 at 6; ECF No. 9-1 at 5.  Critically, Defendant is unable to say what version of these Terms & Conditions was attached to its website (if any) in 2009 or 2010, when Plaintiff purchased the server and backup service, including whether whatever was on the website then had language arguably mandating forum selection.  Defendant also is unable to present the Court with a specific description of its website design during the relevant period so that there is no evidence of how the Terms & Conditions would then have been accessible.  Plaintiff avers that it never saw the Terms & Conditions appended to the motion; through the affidavit attached to its objection, it states that it was never made aware of and never agreed to any terms requiring either binding arbitration or mandatory venue in Cupertino, California.  Hammer Aff. ¶ 4.

In addition to these Terms & Conditions, which were presented with its motion, Defendant's reply to Plaintiff's opposition to the motion to transfer venue relies on two other on-line documents.[5]  Each may briefly be described.

---

[4] Without explanation, Defendant attached slightly different versions of these Terms & Conditions to its motion and its reply.  ECF Nos. 4-2 at 2, ECF No. 9-1 at 2.  Neither is an exhibit to the Jensen Affidavit so neither is specifically authenticated as a version actually linked to Defendant's website.  At oral argument on the motion, Defendant was not able to explain the discrepancy.

[5] Plaintiff did not object to the procedural irregularity of raising new substantive arguments in the reply memorandum.  See DRI LR Cv 7(b)(2) ("A reply memorandum . . . shall not present additional grounds for granting the motion").  Nor did it take umbrage with Defendant's filing of the Jensen affidavit with its reply.

First, in the package with the server and the introductory letter, Defendant also included a hard copy of a document entitled "Barracuda Backup – Quick Start Guide." Jensen Aff. ¶ 12. In a footnote in barely readable type at the end of the Guide, the reader is advised:

> For terms of use for this product, please visit http://techlib.barracuda.com/x/CYBM (Limited Warranty and License) in the Barracuda TechLibrary, v5.0 120308-07-1128sk.

ECF No. 9-5 at 2. In the present, a user can use this link to reach a webpage entitled "Limited Warranty and License" (hereinafter "Warranty & License"). Jensen Aff. ¶ 13. In addition to extensive warranty and licensing language as suggested by the title, this webpage also contains the following:

> THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, USA WITH JURISDICTION OF SANTA CLARA COUNTY, CALIFORNIA.

ECF No. 9-2 at 6. As with the Terms & Conditions, the record is silent regarding what language was in the Warranty & License and how it was accessed on the website at the time of Plaintiff's purchase.

The third of the on-line documents on which Defendant relies is linked to its "Cloud Control Interface," into which the purchasers must log on to activate the service. Jensen Aff. ¶ 19. Mr. Jensen avers that Plaintiff activated its server on January 14, 2010, and, therefore, necessarily logged into the Cloud Control Interface. Jensen Aff. ¶ 20. Once there, the activation is accomplished by clicking on a tab labeled "Link a Backup Appliance." Jensen Aff. ¶¶ 21-22. Next to that tab at the time of Plaintiff's purchase was another tab – not necessary for the activation process – ambiguously labeled "Documentation." Jensen Aff. ¶¶ 24-25; ECF No. 9-7 at 2. Among the material a purchaser would have located in January 2010 by clicking on the Documentation tab was a document entitled "Terms of Service." Jensen Aff. ¶¶ 24-25; ECF No.

9-8 at 2-25.  On page thirteen of the twenty-four-page version appended to Defendant's reply brief, the Terms of Service state:

> All disputes arising under or relating to this Agreement shall be resolved by final and binding arbitration conducted before a single arbitrator . . . .  Evidentiary hearings and any other proceedings requiring personal attendance of parties or their representatives or witnesses shall be conducted in San Jose, CA or such other place within the United States as the arbitrator may direct in the case of all other Licensees.

ECF No. 9-8 at 14.  Although the Jensen Affidavit avers that the Terms of Service were linked to the Cloud Control Interface at the time of Plaintiff's purchase, it does not aver whether the version attached to its reply brief is the same as the version accessible in January 2010.  Jensen Aff. ¶¶ 20-25.

At the hearing, the Court focused on the Jensen affidavit, which appears to state that the description of the operation of the website and the versions of the Terms & Conditions and the Warranty & License presented to the Court in connection with this motion are as of the present.  Jensen Aff. ¶¶ 10, 11, 13.  Only the website placement of the Terms of Service document is described as it was maintained at the time that Plaintiff activated the backup service, although Mr. Jensen does not elucidate whether the version of the Terms of Service attached to Defendant's Reply (but not to the Jensen Affidavit) is identical to the version in effect at the time of Plaintiff's purchase.  Jensen Aff. ¶ 24.  Based on the representations of counsel, the Court confirmed that most of the evidence presented by Defendant pertains to the present.  In response to the Court's inquiry regarding what was posted and how it was accessed in 2009 and 2010 when the contract was formed, Defendant requested, and the Court allowed, nearly a month for it to supplement the record with evidence of how the website functioned in 2010.  No supplementation was filed.  Rather, on December 3, 2015, Defendant advised Plaintiff and the

Court informally that it was unable to replicate the requested information and would not submit any additional evidence in support of its motion.

## II. APPLICABLE LAW

Since the United States Supreme Court's recent pronouncement on the topic, a motion to transfer venue based on a valid forum selection clause arises under 28 U.S.C. § 1404(a). Atlantic Marine Constr. Co. v. U.S. Dist. Ct. W.D. Tex., 134 S. Ct. 568, 575 (2013) ("a forum-selection clause may be enforced by a motion to transfer under § 1404(a)"). Because a federal court may order arbitration only in its own district, an agreement mandating binding arbitration in a district other than the forum is enforced by a motion to transfer venue to the district where the arbitration must be conducted (here the Northern District of California), followed by a motion to stay or dismiss in favor of binding arbitration. Snyder v. Smith, 736 F.2d 409, 418-20 (7th Cir. 1984), overruled on other grounds, Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998); Dempsey v. George S. May Int'l Co., 933 F. Supp. 72, 75-76 (D. Mass. 1996); see also Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 171 (3d Cir. 2012); Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1218-20 (10th Cir. 2005); EMC Corp. v. LeBlanc, No. 14-CV-12524-IT, 2014 WL 3943032, at *3 n.2 (D. Mass. Aug. 11, 2014). Thus, Defendant's motion to transfer venue is the first leg of a journey to enforce what it alleges is a valid agreement to resolve contractual disputes through binding arbitration conducted within the Northern District of California.

Under the Atlantic Marine framework, the first issue for determination is the validity and enforceability of the forum-selection clause. Silvis v. Ambit Energy, L.P., 90 F. Supp. 3d 393, 397 (E.D. Pa. 2015). Once the Court is satisfied that the parties' contract contains a valid forum-selection clause, representing their agreement as to the most proper forum, the Court need not

consider the plaintiff's choice of forum nor inquire further regarding the parties' private interest. Atlantic Marine, 134 S. Ct. at 581-82 (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31, 33 (1988)); Silvis, 90 F. Supp. 3d at 397. Instead, the forum selection clause should be given controlling effect in all but the most exceptional cases. Atlantic Marine, 134 S. Ct. at 581.

The burden of demonstrating that a forum selection clause is a valid and enforceable term of the agreement between the parties rests on the party asserting it. Rojas-Lozano v. Google, Inc., No. 15-10160-MGM, 2015 WL 4779245, at *2 n.4 (D. Mass. Aug. 12, 2015) (validity of forum selection clause for venue transfer motion is evidentiary issue on which defendant seeking transfer bears the burden of proof) (citing Coady v. Ashcraft & Gen., 223 F.3d 1, 11 (1st Cir. 2000)); see Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009) (defendant has burden of demonstrating the existence of valid arbitration agreement). Some courts, notably those in the Second Circuit, require that the party seeking to persuade the court to grant a transfer motion must sustain its burden with clear and convincing evidence.[6] N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113-14 (2d Cir. 2010); IXI Mobile (R&D) Ltd. v. Samsung Elecs. Co., Nos. 14-cv-4355, 4428, 7954 (RJS), 2015 WL 4720293, at *1 (S.D.N.Y. Aug. 6, 2015). Whatever the burden, the court deciding a venue motion may consider facts outside the pleadings. Cairo, Inc. v. Crossmedia Servs., Inc., No. C 04-04825, 2005 WL 756610, at *4 (N.D. Cal. Apr. 1, 2005). When there are contested facts bearing on the enforceability of the forum selection clause, the court is obligated to draw all reasonable inferences and resolve all factual disputes in favor of the non-moving party; alternatively, it may conduct a pretrial evidentiary hearing to resolve factual disputes. Id.; see Silvis, 90 F. Supp. 3d at 398-400.

---

[6] At the hearing on this motion, Defendant advised the Court that it believes that its burden is to present clear and convincing evidence of the formation of a valid agreement to select a specified forum. In light of the paucity of Defendant's evidence, I find that there is no need to decide whether Defendant's burden is to produce a preponderance of evidence or clear and convincing evidence. Its proof clears neither evidentiary hurdle.

A threshold consideration is what law to apply to the determination of the validity of a forum selection clause.  Plaintiff does not answer this question but relies on Rhode Island law.  Defendant points to the language of the on-line documents, all three of which call for the application of the law of California.  ECF No. 4-2 at 6 (Terms & Conditions: "[t]he arbitrators . . . will follow the law and judicial precedents that a United States District Judge sitting in the county of Santa Clara would apply"); ECF No. 9-2 at 6 (Warranty & License: "THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, USA"); ECF No. 9-8 at 15 (Terms of Service: "All other [than those governed by the Federal Arbitration Act or the Convention of the Recognition and Enforcement of Foreign Arbitral Awards] provisions of this Agreement shall be governed by and construed and interpreted in accordance with the internal laws of the State of California Santa Clara County, USA").  This begs the question – unless the terms in these on-line documents are part of the contract, their choice of laws language is beside the point.  Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) ("whether the choice of law provision applies depends on whether the parties agreed to be bound by Barnes & Noble's Terms of Use in the first place"); Defontes v. Dell Computs. Corp., No. C.A. PC 03-2636, 2004 WL 253560, at *3 (R.I. Super. Ct. Jan. 29, 2004), aff'd sub nom., DeFontes v. Dell, Inc., 984 A.2d 1061 (R.I. 2009) ("[c]learly, to give effect to the choice of law provision in the agreement before deciding whether the agreement is valid or not would be illogical") (quoting New Medico Assocs., Inc. v. Kleinhenz, No. 90 C 6782, 1991 WL 105600, at *2 (N.D. Ill. May 31, 1991)).  In short, this Court must decide which state's law would apply in the absence of any agreement between the parties, and apply that law in order to determine whether the on-line terms (including the choice of law) are enforceable.

This seemingly daunting task is easy in this case: neither the parties in their arguments, nor this Court's own research, reveal any way in which the laws of California and Rhode Island materially differ with respect to analysis of the validity of on-line contractual terms. Both states draw on a decision of the Second Circuit written by then-Circuit Judge Sotomayor. Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 20 (2d Cir. 2002) (Sotomayor, J.) (applying California law to on-line contract formation); see Nguyen, 763 F.3d at 1175, 1177 (relying on Specht); Defontes, 2004 WL 253560, at *5-7 (applying Rhode Island law to on-line contract formation by reliance on Specht). Accordingly, there is no need to engage in this circular inquiry. See Nguyen, 763 F.3d at 1175 (California court need not decide whether on-line terms are valid when both New York law and California law dictate the same outcome). Because California law is better developed, it will be the focus of this analysis.

To resolve the central question of validity of the three forum selection clauses at issue in this case, the Court must grapple with issues of contract formation in cyberspace. Specht, 306 F.3d at 20. Specht holds that whether contractual terms posted on-line are binding on the users of a website depends on whether the movant can establish reasonable notice of the terms and unambiguous manifestation of assent; the inquiry for the court is whether a reasonably prudent internet user would have known or learned of the existence of the terms before downloading software or using the product. Id. In Specht, the on-line forum selection and arbitration clauses were located in a license agreement linked to a webpage accessed by scrolling past the download button to a warning that the license agreement terms must be read before acquiring the product. Id. at 23-24. The plaintiff consumers of the product submitted affidavits and deposition testimony in which they swore that they never scrolled down and never saw the terms on the webpage. Id. at 23. Based on this evidence, the district court concluded, and the circuit court

9

affirmed, that no reasonable fact-finder could find that the defendants would prevail in showing that users of the software agreed to the terms. Id. at 27-28. As a result, the court was able to decide the questions of reasonable notice and objective manifestation as a matter of law. Id. at 28. Holding that reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility, and that both were absent based on the facts presented by the parties, the court affirmed the district court's denial of the motion to compel arbitration. Id. at 35.

Since Specht, as the law of on-line contract formation has matured, courts have come to distinguish two types of on-line contracts: "click-through" and "browse-wrap." See generally Michael J. Madison, Rights of Access and the Shape of the Internet, 44 B.C. L. Rev. 433, 446-64 (2003). Click-through agreements are formed when the user is required to affirmatively click "I accept" or "I agree" before proceeding with use of the website, software or other on-line product. Nguyen, 763 F.3d at 1176-77; Madison, supra, 44 B.C. L. Rev. at 448 (neologisms "click-wrap," "click-through," and "click-on" refer to mechanisms employed with pre-packaged Internet-delivered computer software and databases to which access permitted only after clicking "I Accept" or "I Agree;" click-through agreements frequently bridge gaps between two contracting parties separated by third-party distributor). Such agreements are generally found to be valid and enforceable because the click constitutes the affirmative manifestation of assent. Small Justice LLC v. Xcentric Ventures LLC, 99 F. Supp. 3d 190, 196 (D. Mass. 2015), amended, No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015); Bassett v. Elec. Arts, Inc., 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015).

By contrast, a browse-wrap clause is embedded somewhere on a website or elsewhere in cyberspace; whether it is part of a contract depends on whether the website design and context of the presentation establishes that consumers of the product were placed on actual or constructive notice of its terms. Nguyen, 763 F.3d at 1176. Courts have strictly required that such terms must be conspicuous; simply placing the hyperlink with the terms in proximity to the buttons the user must click to complete the purchase is insufficient. Id. at 1178-79 ("consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound"); see Small Justice LLC, 99 F. Supp. 3d at 197 (users placed on inquiry notice of terms by prominent placement in center of screen and links conspicuously visible); Crawford v. Beachbody, LLC, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (hybrid click-wrap with forum selection enforced because link to terms with warning that they are binding conspicuously placed above button to place order); Defontes, 2004 WL 253560, at *7 (applying Rhode Island law, consumers not bound by clause in terms and conditions where notice of terms insufficient). In such circumstances, where there is no evidence that the user had actual knowledge of or ever viewed, let alone manifested assent to, the terms in issue, courts require prominent evidence that consumers were placed on constructive notice and, if not, decline to include such terms as part of the parties' agreement. In re Zappos.com, Inc., Customer Data Sec. Breach Litig., 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).

In addition to constructive notice and manifestation of assent, the fluid nature of on-line postings requires that courts considering whether terms posted on-line are part of a binding agreement must focus on the version of the terms relied on by the movant to determine whether it meets the requirements for a binding agreement. See Bassett, 93 F. Supp. 3d at 99, 104 (where evidence established that plaintiff affirmatively accepted original terms of service at

contract formation and accepted modified terms after new version uploaded, and both versions had substantially same dispute resolution clause, plaintiff bound); Cairo, Inc., 2005 WL 756610, at *5 (if movant establishes that both versions of conspicuously displayed terms and conditions linked to webpages accessed by plaintiff had forum selection clause, plaintiff can be bound).  It is well settled that a forum selection clause is a material alteration to a contract that cannot be introduced unilaterally by one party without the assent of the other; accordingly, if the clause is not included at the time of contract formation, it is not part of the contract.  See Barrette Outdoor Living, Inc. v. Vi-Chem Corp., No. 2:13-CV-289, 2014 WL 3579297, at *2-3 (E.D. Tenn. July 21, 2014) (surveying cases; forum selection clause is a material alteration that does not become part of contract governed by UCC if introduced with acceptance of offer); Metro. Alloys Corp. v. State Metals Indus., Inc., 416 F. Supp. 2d 561, 566-67 (E.D. Mich. 2006) (under UCC, unilateral addition of forum selection clause is material alteration).[7]

### III.   ANALYSIS

With these principles in mind, this Court need not linger long on this motion to transfer venue.

The first forum selection clause proffered by Defendant is in the version of its Terms & Conditions that Defendant presently links to its website; this clause unambiguously mandates that any contractual disputes must be resolved by binding arbitration in Cupertino, California. To buttress its claim of constructive notice, Defendant points to the footer in the introductory letter that was included in the package with Plaintiff's server – "terms and conditions, including product warranty information . . . are located at http://www.barracuda.com."  It argues that this

---

[7] In referencing these cases, I do not intend to suggest that I have made a finding that the UCC is applicable to the transaction at issue in this case.  The applicability of the UCC to transactions involving software licenses linked to hardware purchases is a ponderous topic far beyond the scope of this report and recommendation.  See generally Holly K. Towle, Enough Already: It is Time to Acknowledge that UCC Article 2 Does Not Apply to Software and Other Information, 52 S. Tex. L. Rev. 531 (2011).

language placed Plaintiff on notice of the existence of terms and conditions, although the letter did not include a copy of them.  Defendant avers that, in the present, these Terms & Conditions may be reached by opening its website and making a single click on a button labeled, "Purchase Terms."

This evidence arguably creates a fact issue regarding whether a present-day consumer of Defendant's product (purchasing from a reseller and not through the website) is placed on constructive notice of the applicable terms so as to bind it to those terms whether or not it is actually aware of them.  See Marin Storage & Trucking , Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (Cal. Ct. App. 2001) ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.").  However, whether the language in the introductory letter's footer is analyzed under California law or Rhode Island law, it appears to be legally insufficient to bind such a consumer to the referenced Terms & Conditions.  As then-Circuit Judge Sotomayor wrote, "California's common law is clear that 'an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious.'"  Specht, 306 F.3d at 30 (quoting Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 993, (Cal. Ct. App. 1972)).  Similarly, in Defontes, Judge Silverstein declined to enforce an arbitration clause, despite evidence that the computer was shipped with a copy of the terms and conditions in the package, a copy of the terms was posted on Dell's website and a copy was enclosed with confirming copy of the purchase order.  2004 WL 253560, at *1-2.  Focusing on the content of each of these communications, he found that nothing in them alerted consumers that they needed to return the product to reject the terms; Defontes holds that, without such an alert, consumers are not bound.  Id. at *7.

Here, the language in the footer does not have the appearance of a contract, is not called to the attention of the recipient and does not advise the consumer either how to find the terms or how to reject them. See Marin Storage & Trucking, Inc., 89 Cal. App. 4th at 1049-50 (for constructive notice, writing must appear to be contractual in nature and terms must be called to attention of consumer); Defontes, 2004 WL 253560, at *7 (unless reasonable person would have known that return of product would serve as rejection of terms, consumers not bound). Accordingly, I find that this evidence would be legally insufficient to establish that the forum selection clause in the Terms & Conditions appended to the motion could be part of a valid contract with Plaintiff, even if it had been embedded in a website posting in 2010.

The problem is that Defendant cannot say whether it was or was not. The inadequacy of the language in the introductory letter to provide constructive notice of the need to hunt the website for terms is dwarfed by this far more serious deficiency. The evidence does not establish that any forum selection clause was posted on Defendant's website at the time of the formation of the contract with Plaintiff. Despite a thirty-day continuance to allow Defendant time to find evidence of what was in the actual Terms & Conditions to which Plaintiff was directed by the footer in the introductory letter that arrived in early 2010, it has failed to supplement the record. This leaves this Court with nothing even permitting the inference that an identical forum selection clause was linked to the 2010 version of the website. It also leaves nothing regarding how consumers were directed to the 2010 version of the Terms & Conditions, including the degree to which their placement on the site was sufficiently prominent to provide consumers with constructive notice that continued use of the product amounts to a manifestation of assent. Juxtaposed against Plaintiff's unchallenged averment that it never saw or agreed to a clause mandating binding arbitration in Cupertino, California, this gap in the proof requires me to

recommend that the motion to transfer venue based on the Terms & Conditions should be denied. Hines, 668 F. Supp. 2d at 366-68 (when defendant fails to explain how its customer was advised of terms and conditions, including forum selection clause, they are not part of agreement; motion to transfer venue denied).

The second provision pressed as an enforceable forum selection clause is in the Warranty & License document.  This candidate suffers from the same defects – Defendant is unable to supply any information regarding what was contained in the 2010 version of the posting on its Warranty & License webpage, nor is it able to describe the user experience in 2010 in trying to access the document.  Further, as with the footer in the introductory letter, the footnote in the Barracuda Quick Start Guide ("[f]or terms of use . . . , please visit http://techlib.barracuda.com/x/CYBM") is legally insufficient to alert consumers to the contractual significance of the referenced terms.  For these reasons, I find that Defendant has failed to sustain its burden of demonstrating that the Warranty & License constitutes part of the agreement between Plaintiff and Defendant.  In addition, the Warranty & License fails to support the relief sought by the motion because the version attached to Defendant's reply does not have a forum selection clause; rather, it has a clause that calls for the application of California law with jurisdiction vested in Santa Clara County, California.  Accordingly, I recommend that the motion to transfer venue based on the Warranty & License should be denied.

The third of the three clauses presented in support of this motion is in the Terms of Service linked to Defendant's Cloud Control interface.  The first problem with reliance on these Terms as the foundation for a contract-based venue transfer is that, while Defendant was able to aver that a document entitled "Terms of Service" was linked to the page in 2010, it could not say whether the version supplied with its motion is identical to the 2010 version.  However, unlike

the Terms & Conditions and the Warranty & License, Defendant's proffer is sufficiently specific to permit the Court to evaluate how Plaintiff would have been directed to the Terms of Service. This evidence establishes that, while proximate to the button Plaintiff had to click to activate the service, the placement of the Terms of Service was just as obscure as the placement held to be insufficiently conspicuous in Nguyen. 763 F.3d at 1177-78 (close proximity of hyperlink with contract terms to buttons user must click to complete online purchase not sufficient to place consumers on inquiry or constructive notice of terms). As in Nguyen, Defendant's proof establishes that a button labeled "Documentation" was next to the button used to activate the service and a click on "Documentation" would lead the user to the Terms of Service; however, the website had nothing to put consumers on notice that binding terms were hidden by the button they did not need to click to activate the service. In reliance on Nguyen, which applies the law of both California and New York, 763 F.3d at 1175, I find that the placement of the Terms of Service on Defendant's website as of 2010 was legally insufficient to make them part of a valid contract.

The other problem with Defendant's reliance on the Terms of Service is their actual language (which, as noted, may or may not be the same as the Terms of Service available for view by Plaintiff): it states, "[e]videntiary hearings or any other proceedings requiring personal attendance of parties or their representatives or witnesses shall be conducted in San Jose, CA or *such other place within the United States* as the arbitrator may direct." ECF No. 9-8 at 14 (emphasis supplied). If the parties had agreed to this language, it might require binding arbitration but not a venue transfer because it is clear that it permits the arbitration of disputes to proceed anywhere in the United States. For all of these reasons, I recommend that the motion to transfer venue based on the Terms of Service should be denied.

At bottom, the advent of the internet has not changed the basic requirements of a contract; there is no agreement where there is no acceptance, no meeting of the minds and no manifestation of intent.  In re Zappos.com, Inc., 893 F. Supp. 2d at 1065.  Whether Rhode Island or California law is applied, I find that Defendant has not sustained its burden of demonstrating the existence of a valid forum selection clause because it has failed to show either that Plaintiff had constructive notice of terms and conditions containing such a clause or that a reasonable user of its website would have known that continued use of the backup service contractually obligated it to litigate disputes in California.  Accordingly, I recommend that the motion to transfer venue be denied.

## IV.   CONCLUSION

Based on the foregoing, I recommend that this Court deny Defendant's motion to transfer venue (ECF No. 4).  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 4, 2016